Samuel T. Creason, ISB #8183
Ruvim V. Kuznetsov, ISB #10085
CREASON BURRIS KUZNETSOV, PLLC
1219 Idaho Street
P.O. Drawer 835
Lewiston, ID  83501
Telephone:  (208) 743-1516
Facsimile:   (208) 746-2231
Email:  samc@cbk-law.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH & KAYLA MICHIELLI, husband and wife, and EXTREME FRIESIAN STABLES, LLC, | ) Case No. <br> ) <br> ) <br> ) **COMPLAINT** |
| Plaintiffs, | ) <br> ) |
| v. | ) **DEMAND FOR JURY TRIAL** <br> ) |
| GERM AISE BOUMA, HENSWOUDE DEKSTATION EN EXPORTSTAL, JØRGEN JØRGENSEN & HEIDI JØRGENSEN, husband and wife, and FRIESERSTUTTERI ELLEMOSE, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

COMES NOW Plaintiffs JOSEPH & KAYLA MICHIELLI, husband

and wife, and EXTREME FRIESIAN STABLES, LLC, by and through their

**COMPLAINT - 1**

attorney of record, Samuel T. Creason of Creason Burris Kuznetsov, PLLC and, for cause of action against the above-named defendants, alleges as follows:

## I.     PARTIES

1.1.    Plaintiffs Joseph Michielli and Kayla Michielli are husband and wife, and are domiciled in Latah County, Idaho and reside in Latah County, Idaho.  Plaintiffs Michielli are, therefore, citizens of the State of Idaho for purposes of diversity jurisdiction.

1.2.    Plaintiff EXTREME FRIESIAN STABLES, LLC is an Oregon limited liability company, with its headquarters and principal place of business located in Latah County, Idaho (hereinafter, "EFS").  All members of Plaintiff  EFS are domiciled in the State of Idaho.  Plaintiff EFS is, therefore, a citizen of the State of Idaho for purposes of diversity jurisdiction.

1.3.    On information and belief, Defendant GERM AISE BOUMA is domiciled in Aldeboarn, Netherlands and resides in Aldeboarn, Netherlands. Defendant Bouma is, therefore, a subject of a foreign state for purposes of diversity jurisdiction.

1.4.    On   information   and   belief,   Defendant   HENSWOUDE DEKSTATION EN EXPORTSTAL is a business operation for the breeding,

COMPLAINT - 2

training, inspection preparation, and exporting of Friesian horses that is owned and operated by Defendant Bouma and that maintains its headquarters and principal place of business located in Netherlands (hereinafter, "HDEE"). Defendant HDEE is, therefore, a subject of a foreign state for purposes of diversity jurisdiction.

1.5.    On information and belief, Defendants JØRGEN JØRGENSEN and HEIDI JØRGENSEN are domiciled in Nordborg, Denmark and reside in Nordborg, Denmark.  Defendants Jørgensen are, therefore, subjects of a foreign state for purposes of diversity jurisdiction.

1.6.    On information and belief, Defendant FRIESERSTUTTERI ELLEMOSE is a business operation for the breeding of Friesian horses that is owned and operated by Defendants Jørgensen and that maintains its headquarters and principal place of business in Denmark (hereinafter, "FE"). Defendant FE is, therefore, a subject of a foreign state for purposes of diversity jurisdiction.

1.7.    On information and belief, Defendants have directed goods in the State of Idaho and have sold goods to residents of the State of Idaho in exchange for payment from residents of the State of Idaho.

**COMPLAINT - 3**

1.8.    Defendants hold themselves out to the public as operating their business in the area of the breeding, training, showing, selling, and exporting of Friesian breed horses. Defendants have published multiple statements about their knowledge, skill, expertise, and experience in the field of Friesian horses.

## II.    JURISDICTION & VENUE

2.1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between a citizen of the State of Idaho and the subject of a foreign state and because the defendant has certain minimum contacts with the State of Idaho such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2.2.    Venue in the United States District Court of the District of Idaho is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes action occurred in this judicial district, and because Defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of the action. Any foreign forum selection clause in this matter is unenforceable pursuant to Idaho Code § 29-110.

**COMPLAINT - 4**

### III.   FACTS

3.1     The horse at issue in this case (hereinafter, "Subject Horse") a Friesian stallion that was born on or about May 13, 2014, with the birth name of Tarok Ellemose, at the stable that is owned and operated by Defendants Jørgensen and Defendant FE.  The Subject Horse was later registered with the Koninklijke Friesch Paarden Stamboek under the name Ulbe 506 (Reg. No. 208339201401382).

3.2     The Koninklijke Friesch Paarden Stamboek is the world-recognized official studbook for the Friesian horse breed (hereinafter, "KFPS").  KFPS studbook breeding is strictly controlled and breeding a KFPS-registered and approved stallion to any non-KFPS mares or to any other breed of horse is strongly discouraged.  For a stallion to be approved as breeding stock it must pass a rigorous approval process. Horses are judged at multiple inspections by Dutch judges, who decide whether the horse is worthy of breeding.  If the KFPS deems a Friesian stallion worthy of breeding, then the KFPS issues a "breeding license" for the stallion.  As a general rule, a stallion may obtain a "lifetime" breeding license if he has 40 offspring that have been inspected at three years of age and 20 offspring that have attended an Aptitude Breeding Performance Test (hereinafter, "ABFP test").  A stallion

**COMPLAINT - 5**

with a lifetime breeding license is worth significantly more money than a stallion without a breeding license.

3.3    At least as early as 2024, the Parties began discussing the potential purchase and sale of the Subject Horse from the Defendants to the Plaintiffs.  The negotiations all occurred with Defendant Bouma acting as a principle to the contract and acting as an agent for Defendants Jørgensen and Defendant FE.  Defendants represented to Plaintiffs that the Subject Horse would hold a lifetime breeding license at the time of contracting.

3.4    Prior to contracting Defendants repeatedly assured Plaintiffs that the Subject Horse would have the lifetime breeding license at the time of contracting, or would receive an extension of time to obtain a lifetime breeding license and approved for provisional breeding at the time of contracting.  When Plaintiffs noted that the Subject Horse had not yet been publicly designated as holding a lifetime breeding license, Defendants responded that the KFPS had "changed its rules" with respect to a horse's age designation in a manner that was unusually adverse to the Subject Horse because the Subject Horse did not yet have enough offspring to satisfy the necessary testing.  Defendants also represented that some of the Subject Horse's offspring were due to be tested in January 2025, that the Subject

**Creason Burris Kuznetsov, PLLC**
**P.O. Drawer 835, Lewiston, ID  83501**
**(208) 743-1516; Fax: (208) 746-2231**

Horse would receive his lifetime designation at that time, and that Defendants had spoken with KFPS and KFPS was going to grant an extension for the Subject Horse with respect to breeding rights in the interim.

3.5    Plaintiffs later discovered—and hereby allege on information and belief—that Defendants misrepresented (a) the number of offspring of the Subject Horse and, therefore, the reason behind the Subject Horse's lack of lifetime breeding license; and (b) that Defendants confirmed with KFPS that an exception would be made for the Subject Horse with respect to continued breeding rights.

3.6    On or about November 12, 2024, the Parties executed a *Bill of Sale* for the Subject Horse.  The total sale price for the Subject Horse was €300,000.00, payable in set installments.  The sale price reflects the fair market value of a stallion who has a lifetime breeding license.

3.7    After execution of the *Bill of Sale*, Plaintiffs learned through a posting by KFPS that the Subject Horse had ***not*** received a lifetime breeding license or extension as of the date of execution.  Furthermore, the Subject Horse was placed "on hold" by the KFPS with respect to his temporary breeding license.  As a result of this condition, Plaintiffs and the Subject Horse were the object of significant criticism in the relevant community.  Plaintiffs

**COMPLAINT - 7**

**Creason Burris Kuznetsov, PLLC**
P.O. Drawer 835, Lewiston, ID  83501
(208) 743-1516; Fax: (208) 746-2231

lost several business opportunities for breeding the Subject Horse in the Spring of 2025.

3.8     Plaintiffs promptly raised the topic of a rescission. Defendants did not deny that the contract was predicated on the Subject Horse holding a lifetime breeding license and did not deny that the terms of the contract reflected that the Subject Horse would hold a lifetime breeding license. Instead, Defendants responded to Plaintiffs' concerns by assuring the Plaintiffs that it was a simple "misunderstanding" by KFPS and that Defendants would get it quickly resolved.  Plaintiffs relied upon Defendants' assurances.

3.9     Plaintiffs promptly notified Defendants that the damages from this breach were a loss of the 2025 breeding season.  Defendants did not deny that those damages were caused by the breach, but rather responded that they should continue to work with KFPS.

3.10   Plaintiffs invested significant time and resources attempting to obtain a ruling by the KFPS that (a) the Subject Horse was approved for breeding on a provisional basis, and (b) the Subject Horse would promptly be approved for a lifetime breeding license, without interruption in interim breeding rights.

**COMPLAINT - 8**

**Creason Burris Kuznetsov, PLLC**
P.O. Drawer 835, Lewiston, ID  83501
(208) 743-1516; Fax: (208) 746-2231

3.11  As a result of Defendants' breach, Plaintiffs could not import the Subject Horse until the end of February 2025.

3.12  KFPS did not reinstate the Subject Horse's provision status for breeding until on or about March 26, 2025.

3.13  Given the nature of breeding scheduling in the relevant market, Plaintiffs lost the business expectancy of breeding during the 2025 calendar year.

## IV.  CAUSES OF ACTION

4.1.  Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs seek those equitable remedies and legal damages available under all legal and equitable causes of action supported by the short, plain statement of facts set forth herein.  Without limiting the legal and equitable causes of action which may be pursued in this matter, Plaintiffs' causes of action expressly include the following, either combined or in the alternative: (A) Breach of Contract, including breach of express warranties and breach of implied warranties; (B) Fraud; and (C) Unjust Enrichment.

### A.  Breach of Contract

4.2.  Plaintiffs and Defendants had an agreement in which Defendants would sell the advertised Subject Horse along with lifetime breeding license

**COMPLAINT - 9**

rights, to Plaintiffs in exchange for a purchase price of €300,000.00.

4.3.    Defendants made several express warranties regarding the condition of the Subject Horse, including that the horse would be transferred along with a lifetime breeding license.

4.4.    Defendants impliedly warranted that the Subject Horse would be in merchantable condition, fit for its particular purpose, and conform to the descriptions that were part of the sale negotiations including, but not limited to, a lifetime breeding license.

4.5.    Plaintiffs relied upon the foregoing contractual obligations, express warranties, and implied warranties in purchasing the Subject Horse.

4.6.    Defendants breached their agreement with Plaintiffs by delivering a horse that materially failed to meet the express and implied warranties for the Subject Horse.

4.7.    The breaches by Defendants, as set forth herein, have caused Plaintiffs to suffer damages and subjected Plaintiffs to anticipated future damages in an exact amount to be proven at trial.  Those damages include, but are not limited to, costs and expenses associated with the purchase of the Subject Horse; costs and expenses associated with the shipping and care of the Subject Horse; costs and expenses associated with the inspection, review

COMPLAINT - 10

and attempt to breed the Subject Horse; business interruption; loss of reputation; loss of business; costs and attorney's fees; and similar direct and consequential damages.

4.8.   Plaintiffs are entitled to recover from Defendants all damages caused by Defendants' breaches, either jointly or severally.

4.9.   If, in the alternative, the evidence establishes that there was a mistake of fact between the parties regarding the Subject Horse, then Plaintiffs are entitled to the equitable remedy of rescission.

### B. Fraud

4.10.  Several of the representations published by Defendants regarding the Subject Horse are materially false.  The false representations include, but are not limited to, the status of the Subject Horse's breeding license.

4.11.  Defendants knew of the falsity of the representations, and/or acted with sufficient disregard of the truth or falsity of the representations such that they should be deemed to have known of the falsity of the representations.

4.12.  Defendants knew or should have known that Plaintiffs would rely upon those misrepresentations in deciding to purchase the Subject Horse.

4.13.  Defendants intended Plaintiffs rely upon the representations

**COMPLAINT - 11**

published as part of the sale of the Subject Horse.

4.14. Plaintiffs were ignorant of the falsity of Defendants' representations.

4.15. Plaintiffs relied upon the Defendants' misrepresentations in deciding to purchase the Subject Horse.

4.16.  The misrepresentations caused Plaintiffs to suffer damages in the form of purchasing a horse without an immediate lifetime breeding license.

4.17.  Plaintiffs are entitled to recover from Defendants all damages caused by Defendants' fraudulent misrepresentations, either jointly or severally.

### C.  Unjust Enrichment

4.18. Plaintiffs have paid Defendants €150,000.00 to date, which Defendants have retained.

4.19. Defendants have appreciated the benefits of receiving and retaining the €150,000.00 payment.

4.20.  It would be inequitable for Defendants to be permitted to retain the €150,000.00, given the facts alleged herein.

4.21.  Furthermore, Defendants have asserted a right to re-take possession of the Subject Property.  It would be inequitable for Defendants to

COMPLAINT - 12

be permitted to retake possession of the Subject Horse, given the facts alleged herein.

## V.   PRAYER FOR RELIEF

Wherefore, Plaintiffs pray as follows:

1.    For an award of damages together with prejudgment interest against the Defendants in an amount to be proven at trial.

2.    For the alternative equitable remedy of rescission of the commercial transaction.

3.    For an award of reasonable attorney's fees and costs incurred in pursuit of this action in an amount to be proven at the time of trial, pursuant to the terms of the agreements between the parties, the Federal Rules of Civil Procedure, and other applicable law.

4.    For such other and further relief as the Court may deem just and equitable.

DATED this 31st day of December, 2025.

CREASON BURRIS KUZNETSOV, PLLC

/s/ Samuel T. Creason
Samuel T. Creason, ISB #8183
Attorneys for Plaintiff

COMPLAINT - 13

<u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial pursuant to its rights under Rule 38 of the Federal Rules of Civil Procedure.

DATED this 31st day of December, 2025.

CREASON BURRIS KUZNETSOV, PLLC

*/s/ Samuel T. Creason*
Samuel T. Creason, ISB #8183
Attorneys for Plaintiff

**COMPLAINT - 14**