JONATHAN D. HALLY
jonhally@idahoconstructionlawyers.com
Idaho State Bar No. 4979
BLEWETT MUSHLITZ HALLY, LLP
710 16th Avenue
P.O. Box 1990
Lewiston, Idaho 83501
Telephone: (208) 413-6678
Facsimile:  (208) 413-6682
Attorneys for Defendants/Counterclaimants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH MICHIELLI and KAYLA MICHIELLI, husband and wife; and EXTREME FRIESIAN STABLES, LLC, <br><br> Plaintiffs/Counterdefendants <br><br> vs. <br><br> GERM AISE BOUMA; HENSWOUDE DEKSTATION EN EXPORTSTAL; JØRGEN JØRGENSEN and HEIDI JØRGENSEN, husband and wife; and FRIESERSTUTTERI ELLEMOSE, <br><br> Defendants/Counterclaimants | Case No.  3:25-cv-00737-REP <br><br> **ANSWER AND COUNTERCLAIM** |

COMES NOW the Defendants, GERM AISE BOUMA, HENSWOUDE DEKSTATION EN

EXPORTSTAL, JØRGEN JØRGENSEN, HEIDI JØRGENSEN, and FRIESERSTUTTERI

ELLEMOSE (hereinafter referred to collectively as "Defendants"), in the above-entitled matter, by

and through their attorney, Jonathan D. Hally of the law firm of Blewett Mushlitz Hally, LLP, and

Answer Plaintiffs' Complaint as follows:

1.      Defendants deny each and every allegation contained in Plaintiffs' Complaint unless

such allegation is expressly and specifically admitted herein.

**ANSWER AND COUNTERCLAIM**                    **– 1**

2.    Defendants admit the allegations in paragraph 1.1.

3.    In answer to paragraph 1.2, Defendants admit that Extreme Friesian Stables, LLC ("EFS") is an Oregon limited liability company but are without sufficient knowledge to admit or deny the balance of the allegations and, therefore, deny the same.

4.    Defendants admit the allegations set forth in paragraphs 1.3, 1.4, 1.5, 1.6, 1.7 and 1.8.

5.    Paragraphs 2.1 and 2.2 only assert legal conclusions for which an answer is not required; however, to the extent an answer is deemed necessary, Defendants admit that the Court has jurisdiction and that venue is proper.

6.    Defendants admit the allegations set forth in paragraph 3.1 and 3.2.

7.    In answer to paragraph 3.3, Defendants admit the allegations set forth in the first sentence of paragraph 3.3 and deny the allegation that Defendants represented to Plaintiffs that the Subject Horse would hold a lifetime breeding license at the time of contracting.

8.    Defendants deny the allegations set forth in paragraph 3.4 and 3.5.

9.    In answer to paragraph 3.6, Defendants admit the first two sentences and deny the last sentence.

10.    As to paragraph 3.7, Defendants do not have sufficient information to admit or deny what Plaintiffs learned and, therefore, deny the same, and specifically deny that Plaintiffs had first learned that the Subject Horse had not received a lifetime breeding license since paragraph 13 of the contract identifies that the Subject Horse did not have a lifetime breeding license.

11.    In answer to Paragraph 3.8, Defendants deny that Plaintiffs promptly raised the topic of rescission and deny the second sentence since it is premised upon the inaccurate allegations contained within the first sentence being true.  Defendants further deny any insinuation or allegation

**ANSWER AND COUNTERCLAIM**                    – **2**

within the second sentence that the terms of the contract was predicated on the Subject Horse holding a lifetime breeding license or any guarantee or warranty that the Subject Horse would hold a lifetime breeding license. Defendants deny the remaining allegations within paragraph 3.8.

12.     In answer to paragraph 3.9, Defendants deny the first sentence and any allegation or assertion that Defendants breached the contract and deny that the Plaintiffs suffered any damages arising from any alleged breach. In further answer, Defendants assert that the second sentence is premised upon the accuracy of the first sentence which is false and, therefore, deny the balance of the allegations.

13.     In answer to paragraph 3.10, Defendants are without sufficient knowledge as to what time Plaintiffs invested into each activity and, therefore, deny the allegations set forth in paragraph 3.10.

14.     Defendants deny the allegations set forth in paragraph 3.11.

15.     Defendants admit paragraph 3.12.

16.     Defendants deny the allegations set forth in paragraph 3.13.

17.      In answer to paragraph 4.1, Defendants deny that Plaintiffs are entitled to any equitable remedies or legal damages under any causes of action and specifically deny the existence of any breach of contract, breach of express warranties, breach of implied warranties, fraud and unjust enrichment.

18.     In answer to paragraph 4.2, Defendants admit selling the Subject Horse for the purchase price of € 300,000 but deny that the sale included a lifetime breeding license and further answer by affirmatively asserting that paragraph 13 of the contract establishes that the Subject Horse

**ANSWER AND COUNTERCLAIM**                    **– 3**

did not have a lifetime breeding license. In further answer, the Subject Horse does have a lifetime breeding license.

19.     In answer to paragraph 4.3, Defendants admit that the contract does include express warranties regarding the condition of the Subject Horse but deny that any said warranties include that the Subject Horse would be transferred along with a lifetime breeding license but, rather, that paragraph 13 of the contract asserts and acknowledges that the Subject Horse did not possess a lifetime breeding license.

20.     In answer to paragraph 4.4, Defendants deny any warranties were made other than those warranties that are specifically set forth in the contract, and in further answer assert that the contract includes a clause that states "[b]oth parties further agree that no other terms or conditions apply unless noted in this Bill of Sale."  Defendants further deny that they impliedly warranted that the sale provided that the Subject Horse included a lifetime breeding license or a guarantee that the Subject Horse would have a lifetime breeding license, and in further answer assert that the contract denies any such implied warranty by identifying that the Subject Horse did not have a lifetime breeding license.

21.     Defendants deny the allegations set forth in paragraph 4.5, 4.6, 4.7, 4.8, 4.9, 4.10, 4.11, 4.12, 4.13, 4.14, 4.15, 4.16, and 4.17.

22.     Plaintiffs admit paragraph 4.18.

23.     In answer to paragraph 4.19, Defendants assert that they have received and retained the specified payment but have not appreciated the benefits as said payment was not the full amount of the contract and Defendants have suffered damages for Plaintiffs' breach of contract including but not limited to the costs of traveling to Moscow, Idaho to retrieve the Subject Horse as specifically

**ANSWER AND COUNTERCLAIM**                – 4

permitted by paragraph 5 of the contract that "if the Horse is not fully paid before 1st of Dec 2025, sellers are allowed to pick up the Horse without any further warning and refund of any paid money," but Plaintiffs prevented Defendants' retrieval of the Subject Horse.

24.    Defendants deny the allegations set forth in paragraph 4.20.

25.    In answer to paragraph 4.21, Defendants admit that they have asserted a right to re-take possession of the Subject Horse (referenced as "Subject Property" in said paragraph but referred to as "Subject Horse" in the other paragraphs) since the contract specifically states in paragraph 5 of the contract that "[i]f the Horse is not fully paid before 1st of Dec 2025, sellers are allowed to pick up the Horse without any further warning..." and deny that it would be inequitable for Defendants to be permitted to retake possession of the Subject Horse.

**AFFIRMATIVE DEFENSES**

By pleading certain defenses as "affirmative defenses" Defendants do not intend to suggest that they carry the burden of proof for any such defense. Furthermore, by failing to raise any affirmative defense, Defendants do not intend to waive such defenses and specifically reserve the right to amend this Answer to included additional affirmative defenses if such are justified by discovery or by the law of this action.

**FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' Complaint fails to state a claim for which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' equitable claims are barred by the unclean hands doctrine.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred by doctrines of waiver and estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any, may be barred or reduced in part by Plaintiffs' failure to take reasonable steps under the circumstances to mitigate their alleged injuries and damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs materially breached the contract.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claim for unjust enrichment is barred since an enforceable contract exists.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs claims are barred as the contract asserts that the Subject Horse did not possess a lifetime breeding license.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs were aware that the Subject Horse did not possess a lifetime breeding license at the time the contract was executed.

## NINTH AFFIRMATIVE DEFENSE

Defendants never warranted, expressly or impliedly, that the Subject Horse would be granted a lifetime breeding license and Defendants did not make any false or misleading assertions to Plaintiffs regarding the Subject Horse.

## TENTH AFFIRMATIVE DEFENSE

The Subject Horse does possess a lifetime breeding license.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to rescission of contract as there is no factual or legal basis permitting rescission of the contract including but not limited to the fact that Defendants did not

**ANSWER AND COUNTERCLAIM**                    **– 6**

commit fraud or make any false representations, there is no mistake, undue influence, incapacity duress or illegality.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to any damages as Defendants complied with all of their contractual obligations.

WHEREFORE, Defendants pray as follows:

1) That Plaintiffs' Complaint be dismissed with prejudice and that Plaintiffs take nothing thereby;

2) For an award of costs and reasonable attorney fees incurred in this action pursuant to the terms of the agreement between the parties, the Federal Rules of Civil Procedure and other applicable law including but not limited to Idaho Code Sections 12-120(3) and 12-121.

3) For such other and further relief as the court deems just and equitable.

## COUNTERCLAIM

Counterclaimants GERM AISE BOUMA, HENSWOUDE DEKSTATION EN EXPORTSTAL, JØRGEN JØRGENSEN, HEIDI JØRGENSEN, and FRIESERSTUTTERI ELLEMOSE (hereinafter "Counterclaimants"), by and through their undersigned counsel of record, Blewett Mushlitz Hally, LLP, by way of a Counterclaim complaint and allege as follows:

## PARTIES

1. Counterclaimant GERM AISE BOUMA ("BOUMA") is domiciled in and a resident of Aldeboarn, Netherlands.

**ANSWER AND COUNTERCLAIM** – **7**

2. Counterclaimant HENSWOUDE DEKSTATION EN EXPORTSTAL (hereinafter "HDEE") is a business with its headquarters and principal place of business located in the Netherlands and is owned and operated by BOUMA.

3. Counterclaimants JORGEN JØRGENSEN and HEIDI JØRGENSEN (collectively referred to as "JØRGENSEN") are domiciled and reside in Nordborg, Denmark.

4. Counterclaimant FRIESERSTUTTERI ELLEMOSE (hereinafter "FE") is a business that is owned and operated by JØRGENSEN with its headquarters and principal place of business located in Denmark.

5. Counterterdefendants JOSEPH MICHIELLI and KAYLA MICHIELLI (collectively referred to as "MICHELLI" or "Counterdefendants") are, on information and belief, residents of the State of Idaho and domiciled in the State of Idaho.

6. Counterdefendant Extreme Friesian Stables, LLC, on information and belief, is an Oregon limited liability company with its principal place of business located in Latah County, State of Idaho and conducts business in the State of Idaho.

7. On information and belief, the Subject Horse at issue is located within the State of Idaho and within Latah County.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. 1332(a) as the matter in controversy exceeds $75,000.00, exclusive of costs, and diversity of citizenship exists between the Counterclaimants and Counterdefendants. This Court also has jurisdiction pursuant to 28 U.S.C. 1367 as the Counterclaim involves the same case and controversy.

**ANSWER AND COUNTERCLAIM** – **8**

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b)(1) and 1391(b)(2) as the Counterdefendants are residents of the State of Idaho and conduct business within the State of Idaho.

## GENERAL ALLEGATIONS

10.     Counterclaimants and Counterdefendants entered into a written contract wherein Counterclaimants sold and Counterdefendants purchased a Friesian Stallion with a registered name Ulbe 506 (hereinafter the "Subject Horse"). Said contract is attached hereto as Exhibit "A" and is incorporated herein by reference as though fully set forth.

11.     Pursuant to the terms of the contract, the total sale price was €300,000 with €150,000 to be paid immediately to FE and HDEE following satisfactory PPE, blood test, CEM and semen analysis. Counterdefendants did pay the initial payment of €150,000.

12.     Pursuant to the terms of the contract, the remaining €150,000 was to be paid no later than December 1, 2025.

13.     Counterclaimants satisfied all conditions precedent giving rise to the Counterdefendants' duty to perform their duties and obligations under the contract.

14.     Counterdefendants obtained possession of the Subject Horse and Counterdefendants kept the Subject Horse on property situated in Latah County, State of Idaho.

15.     Counterdefendants have failed to pay Counterclaimants the €150,000 balance of the contract price nor any portion of the contract balance despite demands to do so.

16.     Paragraph 5 of the contract further provides that if the Subject Horse is not fully paid before December 1, 2025, then sellers are allowed to pick up the Subject Horse without any further warning or refund of any paid money.

**ANSWER AND COUNTERCLAIM**                          **– 9**

17.     In accordance with paragraph 5 of the contract, Counterclaimant BOUMA, on behalf of all the Counterclaimants, did travel to the State of Idaho and did attempt to pick up the Subject Horse at the location in Moscow, Idaho where the Subject Horse was stored. Counterdefendant Joseph Michielli, on behalf of the Counterdefendants, interceded and prevented Counterclaimants from entering upon the property where the Subject Horse was located and prevented Counterclaimants from retrieving the Subject Horse.

18.     Counterdefendants, by and through Joseph Michielli, notified Counterclaimants that the Counterdefendants did not have the funds to pay the contract balance of €150,000 and requested an additional six (6) months to pay the €150,000 that was owed on the contract, which request was denied.

19.      Lifetime breeding approval or breeding license is attained through testing of the Subject Horse's offspring. The contract, in turn, specifically establishes that the Subject Horse had not obtained lifetime breeding approval or breeding license. More specifically, the contract states at paragraph 13, "Seller assures that the Horse will continue his offspring testing and all testing is fully paid for by the sellers." This provision would be unnecessary if the Subject Horse had already been granted lifetime breeding approval since there would no longer be any need to continue testing the Subject Horse's offspring.

20.     As anticipated, the testing of the Subject Horse's offspring continued and the Subject Hose was granted lifetime breeding approval or breeding license. Nevertheless, the Counterdefendants still refuse to pay and have failed to pay the contract balance amount of €150,000 and have refused to return the Subject Horse to Counterclaimants as required by the contract.

**ANSWER AND COUNTERCLAIM**                                    – 10

## CAUSE OF ACTION
### Breach of Contract (damages and specific performance)

21.     Counterdefendants materially breached the contract by failing and refusing to pay the balance of the contract price of €150,000 and then preventing Counterclaimants from retrieving the Subject Horse after Counterdefendants failed to pay the balance of the contract price by December 1, 2025.

22.     As a material breach of contract, Counterclaimants have suffered damages and will continue to suffer damages including but not limited to the loss of possession of the Subject Horse as well as all income that could have been obtained by Counterclaimants via breeding during the time period that they have been unlawfully deprived of the possession of the Subject Horse and/or income from selling the Subject Horse. In addition, Counterclaimants suffered damages including the costs of traveling to Idaho to retrieve the Subject Horse. In the alternative, Counterclaimants have suffered damages including the €150,000 amount that is unpaid, plus pre-judgment interest.

22.     Counterclaimants are entitled to possession of the Subject Horse and for damages as set forth above, which damages shall be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray as follows:

1.      For the equitable remedy of specific performance by way of an Order requiring Counterdefendants to return possession of the Subject Horse to Counterclaimants.

2.      For an award of damages in a sum to be determined at trial.

3.      For an award of reasonable attorney's fees and costs pursuant to the terms of the contract, the Federal Rules of Civil Procedure, and other applicable law.

4.      For such other and further relief as the Court may deem just and equitable.

**ANSWER AND COUNTERCLAIM**                              – 11

DATED this 19th day of February, 2026.

BLEWETT MUSHLITZ HALLY, LLP

By:   /s/ Jonathan D. Hally
Jonathan D. Hally, a member of the firm
Attorneys for Defendants
Idaho State Bar No. 4979
Email: jonhally@idahoconstructionlawyers.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of February, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Samuel T. Creason
Creason Burris Kuznetsov, PLLC
samc@cbk-law.com

By:   /s/ Jonathan D. Hally
Attorney for Defendants

**ANSWER AND COUNTERCLAIM**                    **– 12**

# EXHIBIT "A"

Docusign Envelope ID: 7F773282-C079-47A9-BFCD-F26669D6EDF2



**FRIESIAN STABLES**

## *ULBE 506 BILL OF SALE*

*DATE: 10/25/2024*

*I hereby declare:*

Name: Joe and Kayla Michielli
Extreme Friesian Stables L.L.C (EFS) KFPS R-1040882
Address: 2301 N. Mountain View Rd
            Moscow, ID, 83843
Phone: 509-768-3008    extremefriesianstables@yahoo.com

*Hereafter caller "Purchaser"*

*To have bought from KFPS R-1036950:*

Name: Frieserstutteri Ellemose v. Heidi & Jørgen Jørgensen Address: Ellemosegaard 1, DK 6430 Nordborg, Denmark
Phone: +45 51230419 Email: ellemose@frieserstutteri.dk
Bank account: Kreditbanken A/S, Perlegade 40, 6400 Sønderborg
BIC-code/Swift: AAKRDK22 Iban no: DK9379310001226439 Vat no/CVR: 18224291
&
Germ Aise Bouma / Henswoude Dekstation en Exportstal
Prikwei 15, 8495 NG Aldeboarn Netherlands
Phone: +31 566631364 Email: info@henswoude.nl Vat no: NL803037132b02 Bank account:
BIC-code/Swift: ABNANL2A Iban no: NL05ABNA0106202472

*Hereafter-called "Sellers"*
**\*Friesian Approved Stallion – ULBE 506 - KFPS Registration # 201401382 Chip # 208210000497168**

**Passport Name: Tarok Ellemose (Birth Name)**

**Date of Birth: 05/13/2014**

*Hereafter called "Horse"*

**Total Sale Price**: €300,000 Euro

Subject to the following conditions and terms, Purchaser agrees to buy from Seller, and Seller agrees to sell to Purchaser the above-named Horse

1. Purchaser agrees to purchase the horse upon completion of a satisfactory Pre-Purchase Exam, Blood and Semen testing to be completed as soon as possible, paid by Seller
2. Payment to be paid as follows:
3. €150,000 (€75.000 to Frieserstutteri Ellemose and €75.000 to Henswoude Dekstation en Exportstal)to be paid immediately following satisfactory PPE, Blood test, CEM and Semen analysis.
4. Remaining €150,000 (€75.000 to Frieserstutteri Ellemose and €75.000 to Henswoude Dekstation en Exportstal) to be paid no later than the 1st of Dec 2025.

| Initialen toevoegen | Initial |
| --- | --- |
|  GRB   HJJ |  |

Docusign Envelope ID: 7F773282-C079-47A9-BFCD-F26669D6EDF2



**FRIESIAN STABLES**

5.  If the Horse is not fully paid before 1st of Dec 2025, sellers are allowed to pick up the Horse without any further warning and refund of any paid money.
6.  Resale of the Horse or handing over to 3rd part is not allowed until the balance is fully paid to Sellers.

7.  Sellers have all responsibilities, financial care, and liabilities of the Horse until the Horse leaves Henswoude Dekstation en Exportstal and the risk is on the purchaser. Purchaser assumes all risk of loss or injury to the Horse effective after the Horse leaves Henswoude Dekstation for the USA.
8.  Seller warrants that they own and have legal rights to sell the horse.
9.  Seller warrants that the horse is unencumbered.
10. Seller warrants that the horse is free of any "known" defects, disease, illness, and is currently up to date on all veterinary care to the best of seller's knowledge. Purchaser acknowledges The Horse is tested positive of Dwarfism and negative for Waterhead.
11. Seller agrees to provide all prior known veterinary, training, and care information to the Purchaser, if requested by purchaser by December 1st, 2025
12. Purchaser agrees to pay the transfer of registration fee of the horse to FHANA/KFPS Friesian within 30 days of possession.

13. Seller assures that the Horse will continue his offspring testing and all testing is fully paid for by the sellers.
14. Purchaser agrees to hold mortality insurance for the horse for €300,000 at Purchasers expense, and will name Frieserstutteri Ellemose and Henswoude Dekstation en Exportstal as loss payee for €150,000 (€75.000 to Frieserstutteri Ellemose and €75.000 to Henswoude Dekstation en Exportstal)
15. Purchaser will provide proof of insurance to Sellers listing sellers as loss payee before the horse leaves the EU for the USA.
16. The insurance must include fertility coverage that's suitable for a Stallion Station.
17. All won ribbons, or any other gifts including photos and videos aquired before sale of the Horse belongs to the sellers.
18. Purchaser and seller agree that in the event of a dispute between the buyer and the seller, any legal proceedings will take place in the Netherlands.

Additional Frozen Semen / Breeding Terms

19. Purchaser and Seller agree to share expense for the stallion ULBE 506 to be collected and frozen for exportation through VDL Stud in the Netherlands. The expenses will be split 50%/50%.
20. Purchaser and Seller further agree that they will split all breed fees (50%/50%) obtained from all frozen semen sold throughout the world, except for semen sold inside of North America. Those breed fees will belong to Purchaser. VDL Stud will manage the sales of all frozen semen sold inside of Europe and exported out of the Netherlands for the Purchaser and Sellers.
21. All Past and Future Frozen semen collected or manufactured in the EU is Jointly owned by the sellers and the purchaser. (25% Frieserstutteri Ellemose, 25% Henswoude Dekstation en Exportstal, 50% Extreme Friesian Stables)

Initialen toevoegitial   Initial

GAB   HJJ   [signature]

Docusign Envelope ID: 7F773282-C079-47A9-BFCD-F26669D6EDF2



EXTREME
FRIESIAN STABLES

22. Sellers are entitled to 6 total breedings to Horse using frozen semen with no additional "breeding fee" expenses owed to purchaser for the 6 breedings. 6 Total Breedings to be split amongst sellers to be used at seller's discretion. Any additional breedings superseding the 6 breedings will be negotiated between purchaser and seller at the time of future request.

23. In the event that the Purchasers ever decides to re-sell the horse, it is understood that all semen inventory will be owned by the terms of section 21 of this contract. Any new potential owners of the horse will have no legal rights to any current semen inventory. It is agreed that the Re-sale contract with any new potential owner must state this information.

24. Recovers of Attorney's fees and costs: Should it be necessary for any party involved to initiate suit to enforce any terms or conditions of this agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs incurred in such action, to be assessed as cost of litigation.

25. By signing this document both seller and purchaser hereby agree to all terms of this agreement. Both parties further agree that no other terms or conditions apply unless noted in this Bill of Sale.

Ondertekend door:
*Germ Aise Bouma*                                   11/12/2024
979D48928D4C4F7...
_____
Seller: Germ Aise Bouma / Henswoude Dekstation              Date

Signed by:
*Heidi and Jørgen Jørgensen*                        11/12/2024
409633BAB7CD42F...
_____
Seller: Friserstutteri Ellemose                             Date


Signed by:
5E0392A89C22445...                                  11/12/2024
_____
Purchaser: Joe Michielli / Extreme Friesian Stables         Date